Carroll
No. 97-346

ALLAN WONG

v.

DONALD M. EKBERG

Submitted: July 26, 2002
Opinion Issued: September 20, 2002

*Laura Dushame*, of Northampton, Massachusetts, and *H. Brooks Whelan Jr.*, of Somerville, Massachusetts, by brief, for the plaintiff.

*Orr & Reno, P.A.* of Concord (*Emily Gray Rice* and *Jennifer A. Eber* on the brief), for the defendant.

DUGGAN, J. The plaintiff, Allan Wong, appeals an order by the Superior Court (*Fauver*, J.) dismissing his claims of legal malpractice and breach of contract against the defendant, Donald M. Ekberg. We affirm.

The defendant is the attorney who represented the plaintiff when he was convicted on a felony charge of receiving stolen property. In *State v. Wong*, 138 N.H. 56 (1993), we affirmed the plaintiff's conviction. The plaintiff subsequently filed the instant action against the defendant, asserting legal malpractice, negligence and breach of contract. The plaintiff alleged that the defendant was negligent in both his investigation of the case, and in his trial tactics and strategy. The plaintiff also alleged that the defendant breached his fee agreement by failing to properly investigate the case and by failing to adequately defend the plaintiff.

Prior to trial, the defendant moved to exclude the plaintiff's proposed expert testimony because the plaintiff, who was proceeding *pro se*, failed to identify his expert within the timeframe imposed by the structuring conference order. The trial court granted the motion, finding that the plaintiff's failure to disclose his expert was due to his own neglect, rather than accident, mistake or misfortune, and that the defendant would be prejudiced if the plaintiff's expert disclosure was accepted at such a late date in the proceedings. The parties then filed cross-motions for summary judgment.

The trial court granted the defendant's motion as to the claims for breach of contract because the plaintiff's claims "essentially allege[d] that the defendant negligently performed his contractual duties" and "New Hampshire does not recognize [this] cause of action." (Emphasis omitted.) The trial court also granted the defendant's motion as to the negligence claim because the plaintiff did not allege that the defendant owed him any duty independent of his duty as an attorney, and, therefore, the negligence claim simply duplicated the plaintiff's counts for legal malpractice. As for the legal malpractice claims, the defendant argued that he was entitled to summary judgment because the plaintiff could not prove that he was innocent of the underlying crime. As our decision in *Mahoney v. Shaheen, Cappiello, Stein & Gordon, P.A.*, 143 N.H. 491, 495-98 (1999), had not yet been issued, the trial court explained that "[b]ecause this issue has not been squarely addressed by the New Hampshire Supreme Court, it is not a sufficient legal basis for a grant of summary judgment." The trial court denied the plaintiff's *pro se* motion for summary judgment because "the pleading does not contain a single coherent legal argument in support of the plaintiff's motion" and the plaintiff relied "on contested facts to support his argument." The defendant then moved to dismiss the remaining legal malpractice claims, arguing that the plaintiff could not

sustain his burden of proof in the absence of expert testimony. The trial court granted the defendant's motion to dismiss and this appeal followed.

On appeal, the plaintiff first argues that the trial court improperly barred the testimony of his expert witness. He contends that his failure to disclose the identity of his expert witness within the discovery period was the result of accident, mistake or misfortune. He also contends that his expert witness was properly disclosed because, during the discovery period, he had indicated that his expert witness, Attorney Fredella, would be testifying as a factual witness. Lastly, the plaintiff contends that the defendant failed to indicate how he would be prejudiced by allowing Attorney Fredella's expert testimony.

"We have long recognized that justice is best served by a system that reduces surprise at trial by giving both parties the maximum amount of information." *State v. Cromlish*, 146 N.H. 277, 280 (2001). A party is thus entitled to disclosure of an opposing party's experts, the substance of the facts and opinions about which they are expected to testify, and the basis of those opinions. *See* SUPER. CT. R. 35(f); *O'Donnell v. Moose Hill Orchards*, 140 N.H. 601, 604 (1996). This policy of disclosure applies even when a known factual witness acts as an expert. *See Hydraform Prods. Corp. v. American Steel & Alum. Corp.*, 127 N.H. 187, 201-02 (1985). A party's failure to supply this information "should result in the exclusion of expert opinion testimony unless good cause is shown to excuse the failure to disclose." *O'Donnell*, 140 N.H. at 604. In reviewing a discovery sanction, we will not reverse the trial court's ruling unless it constitutes an unsustainable exercise of discretion. *See Matthews v. Matthews*, 142 N.H. 733, 735-36 (1998); *see also State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

■ We disagree with the plaintiff's contention that, because he appeared *pro se* throughout the discovery process, his failure to indicate that Attorney Fredella would be testifying as his expert was the result of accident, mistake or misfortune. *See* Preface SUPER. CT. R. (amended 1999) (permitting court to provide relief from failure to comply with the provisions of any rule only when due to "accident, mistake or misfortune"). The trial court determined that "the scheduling conference order put him on clear notice of his obligations, or, at the very least, of his obligation to inform himself of what the deadline dates represented." The trial court thus concluded that the plaintiff's failure to disclose his expert was due to his own neglect rather than accident, mistake, or misfortune. *See Jamieson, Inc. v. Copeland Coating Co.*, 126 N.H. 101, 103 (1985). The mere fact that the plaintiff was representing himself throughout the discovery process does not excuse him from complying with the trial

court's structuring order. *Cf. State v. Consolidated Recycling*, 144 N.H. 467, 469 (1999).

■ We also disagree with the plaintiff's contention that his expert witness was adequately disclosed because he was listed as a factual witness. The trial court's structuring conference order set specific deadlines for expert disclosure and for discovery. While the plaintiff disclosed that Attorney Fredella would be testifying as a factual witness, he failed to inform the defendant that Attorney Fredella would be testifying as an expert and also failed to provide the substance and basis for any opinions he might offer. The plaintiff's failure to list Attorney Fredella as an expert was not only error, *see Hydraform Prods. Corp.*, 127 N.H. at 201, but also prejudiced the defendant. The plaintiff did not disclose that Attorney Fredella would be testifying as an expert witness until four months after the deadline set for expert disclosure and one month after the close of all discovery. The trial court determined that "acceptance of the plaintiff's expert disclosure would require the defendant to re-depose the plaintiff, depose the plaintiff's expert, and also have his own expert study and critique the plaintiff's expert's opinion." At the time the trial court made this determination, the trial date in the case was set for "less than one month away." As we agree that the defendant would be prejudiced by the plaintiff's late disclosure of his expert witness, we conclude that the trial court properly granted the defendant's motion to strike the plaintiff's expert disclosure.

■ We next consider whether the trial court improperly dismissed the plaintiff's legal malpractice claims for lack of expert testimony. In a legal malpractice case, a plaintiff must prove: (1) that an attorney-client relationship existed, which placed a duty upon the attorney to exercise reasonable professional care, skill and knowledge in providing legal services to that client; (2) a breach of that duty; and (3) resultant harm legally caused by that breach. *Mahoney*, 143 N.H. at 495-96. Because the plaintiff challenges the defendant's investigation of the case and his trial tactics and judgment, the defendant argues that the plaintiff cannot establish the requisite standard of care and prove a breach thereof without expert testimony. We agree.

■ It is well established that expert testimony is required "where the subject presented is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson." *Lemay v. Burnett*, 139 N.H. 633, 634 (1995) (quotation omitted). Whether a plaintiff is required to have expert testimony in order to establish the requisite standard of care and to prove a breach thereof in a legal malpractice case

is a question of first impression for this court. Other jurisdictions that have addressed this issue have held that, except in clear or palpable cases, "[i]n an action for legal malpractice, expert testimony is generally needed to establish both the level of care owed by the attorney under the particular circumstances and the alleged failure to conform to that benchmark." *Wagenmann v. Adams*, 829 F.2d 196, 218 (1st Cir. 1987); *see also McCafferty v. Musat*, 817 P.2d 1039, 1044 (Colo. Ct. App. 1990). The reason for this requirement is that "[w]ithout expert testimony, lay juries cannot understand most litigation issues, local practices, or the range of issues that influence how an attorney should act or advise." 5 R. MALLEN & J. SMITH, LEGAL MALPRACTICE § 33.16, at 110 (5th ed. 2000). Thus, "to avoid liability being imposed solely upon a disgruntled client's version of what happened or what he or she believes should have happened," *id.* at 107, expert testimony is necessary to inform the jury regarding the skill and care ordinarily exercised by lawyers, a measure not ordinarily within the common knowledge of lay persons. *Id.* at 114.

■ While expert testimony may not be required when "the evidence of negligence is so patent and conclusive that reasonable persons can reach only one conclusion," MALLEN, *supra* at 110, this is not such a case. *Cf. Wagenmann*, 829 F.2d at 220-21. Here, the plaintiff alleged the defendant negligently investigated the case by failing to interview certain witnesses. Because the extent to which an attorney, in the exercise of due care, will advance funds to hire investigators or depose witnesses is not a matter of common knowledge, a jury would not be able to evaluate the adequacy of the attorney's actions without the aid of expert testimony. *See Kirsch v. Duryea*, 578 P.2d 935, 940 (Cal. 1978); MALLEN, *supra* at 118.

■ The plaintiff also alleged that the defendant: (1) failed to object to purported improper statements made by the prosecutor during closing argument; (2) failed to locate one witness and failed to subpoena another witness; (3) improperly stipulated to certain facts during the hearing on the motion to suppress; (4) failed to raise a fair trial issue with regard to the plaintiff's race; and (5) refused to let the plaintiff's Massachusetts attorney sit at the defense table during the criminal trial. As all of these decisions were tactical or judgment issues, we conclude that expert testimony was required — without it, the jury would be permitted to speculate about "the standards and recommended practices and procedures of [the] profession." RSA 508:13 (1997); *see also Berman v. Rubin*, 227 S.E.2d 802, 806 (Ga. Ct. App. 1976).

■ We also reject the plaintiff's argument that expert testimony is not needed in this case because the rules of professional conduct may be used

to determine whether the defendant met the standard of conduct required of attorneys. "A codified ethical rule does not suffice as a substitute for the required evidence." MALLEN, *supra* at 115. The introductory note outlining the scope of the New Hampshire Rules of Professional Conduct (rules) explains that "[v]iolation of a Rule should not itself give rise to a cause of action nor should it create any presumption that an independent legal duty has been breached." N.H. R. PROF. CONDUCT Scope. Because the rules specifically explain that they "are not designed to be a basis for civil liability," *id.*, we reject the plaintiff's contention that he can establish the defendant's duty and breach solely through the rules of professional conduct.

We next consider whether the trial court erred in granting summary judgment on the plaintiff's claims for breach of contract. "In reviewing a grant of summary judgment, we look at the affidavits and other evidence, and all inferences properly drawn therefrom, in the light most favorable to the non-moving party." *Forbes Farm P'ship v. Farm Family Mut. Ins. Co.*, 146 N.H. 200, 201 (2001) (quotation omitted). We will affirm the judgment if the evidence reveals no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. *See* RSA 491:8-a, III (1997).

The trial court granted summary judgment as to the plaintiff's breach of contract claims on the basis that they essentially alleged that the defendant negligently performed his contractual duties. Because New Hampshire does not recognize a cause of action for negligent performance of a contract, *see PK's Landscaping, Inc. v. N.E. Telephone Co.*, 128 N.H. 753, 757 (1986), the trial court determined that the plaintiff's breach of contract allegations simply gave rise to a claim for legal malpractice and, therefore, dismissed these claims as redundant.

While New Hampshire does not recognize a cause of action for negligent performance of a contract, all of the cases discussing this cause of action involve attempts by litigants to plead a tort claim for what essentially is an action for breach of contract. *See id.* at 757-58; *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 613 (1978); *Barrett v. Company*, 80 N.H. 355, 360 (1922). Unless the contract involves a fiduciary duty on the part of one of the contracting parties or the facts constituting the breach of a contract also constitute a breach of a duty owed by the defendant to the plaintiff independent of the contract, we have held that a claim for the negligent performance of a contract cannot stand. *See Robinson v. Colebrook Savings Bank*, 109 N.H. 382, 384-85 (1969); *Lawton*, 118 N.H. at 613; *see also PK's Landscaping, Inc.*, 128 N.H. at 757-58. By contrast, in this case, the plaintiff's claim is essentially a tort

claim, not a breach of contract claim. As such, the issue is whether the legal malpractice action could also give rise to a breach of contract claim.

It has been explained that:

> [A]n action for legal malpractice may be framed conceptually either as a tort or a breach of contract. The failure to exercise the requisite skill, care and diligence necessary to the proper rendition of legal services may give rise to an action for breach of contract. Similarly, it may constitute a tort.

*Peters v. Simmons*, 552 P.2d 1053, 1055 (Wash. 1976) (citations omitted). The modern trend in analyzing legal malpractice causes of action, however, has been to blur the contract-tort distinction and, in most jurisdictions, there is no difference between the remedies for the different theories. *See Jackson v. Rogers & Wells*, 258 Cal. Rptr. 454, 462 (Ct. App. 1989); 1 MALLEN, *supra* § 8.7, at 820. In fact, since the difference between an implied contract and a negligence theory is generally insignificant, many courts refuse to recognize any distinction between the actions and will dismiss a plaintiff's implied breach of contract claims as redundant. *See Cherry v. Decker*, 720 N.Y.S.2d 415, 416 (App. Div. 2001); *Goffney v. Rabson*, 56 S.W.3d 186, 191 (Tex. Ct. App. 2001).

We have held that a plaintiff can maintain a legal malpractice action both in contract, under a third-party beneficiary theory, and in tort, under a negligence theory. *See Simpson v. Calivas*, 139 N.H. 1, 3-7 (1994); *MacMillan v. Scheffy*, 147 N.H. 362, 364 (2001). We have also permitted, in a medical malpractice context, a plaintiff to maintain a breach of contract claim where the breach involved an express contract involving a specific promise. *See Anglin v. Kleeman*, 140 N.H. 257, 260 (1995). In other cases, however, we have upheld the dismissal of one of the plaintiff's contract or tort claims when "the claims in the two suits are one in the same." *Taylor-Boren v. Isaac*, 143 N.H. 261, 266 (1998) (quotation and brackets omitted); *cf. Gould v. Concord Hospital*, 126 N.H. 405, 407-08 (1985) (applying tort statute of limitations for plaintiff's claim of breach of implied contract because failure to provide "appropriate" medical care substantively alleged a claim in tort, not contract).

While we see no reason to create a rule completely barring a plaintiff from pleading a legal malpractice claim under theories of both tort and implied contract, as the plaintiff has done in this case, we note that the same facts often support both causes of action and the remedies for them will usually not differ. *See* MALLEN, *supra* § 8.7, at 820. Moreover, because the same principles govern an action sounding in tort and in implied contract, a plaintiff will be required to introduce expert testimony to

establish the standard of care and the attorney's deviation therefrom. *See id.*

■ In this case, the theory underlying the plaintiff's breach of contract claim was not distinct from the claim sounding in tort, and, therefore, the plaintiff was required to introduce expert testimony to support both his implied contract and tort claims. The plaintiff's writ alleged that the defendant failed to perform his obligations under the agreement by failing to properly investigate the case and by failing to properly prepare for trial. Although couched in terms of a breach of contract, these allegations basically did no more than reiterate the previously mentioned cause of action for legal malpractice. *See Citizens State Bank of Dickinson v. Shapiro,* 575 S.W.2d 375, 387 (Tex. Civ. App. 1978); *Jackson,* 258 Cal. Rptr. at 462. The plaintiff did not allege that the defendant breached an express contract involving a specific promise, but instead alleged only that the defendant breached the good faith requirement that he carry out his duties under the contract and that he failed to act in the plaintiff's best interests. Because the plaintiff was barred from introducing any expert testimony regarding the standard of care to support any of his claims, we conclude that the trial court did not err in granting summary judgment as to the breach of contract claims.

In light of our decision, we need not address the defendant's argument that he was entitled to summary judgment as to the legal malpractice claims because the plaintiff was unable to prove, by a preponderance of the evidence, his actual innocence. *See Mahoney,* 143 N.H. at 495-99. We also need not address the plaintiff's remaining arguments that the trial court improperly denied his cross-motion for summary judgment and his motion to amend his complaint to add damage claims, as resolution of these issues would have no effect on the outcome of this case. *See Vogel v. Vogel,* 137 N.H. 321, 322 (1993).

*Affirmed.*

NADEAU and DALIANIS, JJ., concurred.